## DAVIS v. PERRY.

### (Circuit Court of Appeals, Second Circuit. January 8, 1903.)

### No. 21.

1. PATENTS—VALIDITY AND INFRINGEMENT—INKSTAND.

The Davis patent, No. 605,177, for an inkstand, discloses invention in view of the simplicity of the device and the elimination of parts from the inkstands of the same general type in the prior art, and its utility and success, although the improvement is a narrow one. Claims 1 and 3 also *held* infringed by inkstands made in accordance with the Ashley patent, No. 661,334.

2. SAME—INFRINGEMENT—DEFENSES.

Where infringement would necessarily or naturally result from the ordinary use of a device, a defendant cannot escape liability for infringement by merely showing the possibility of a different use. The decisive question is whether the operation of the alleged infringing device when in use is the same, and produces the same results.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For opinion below, see 115 Fed. 333.

F. P. Warfield, and Charles H. Duell, for appellant.

Clifton V. Edwards, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. This cause comes here upon an appeal of the complainant in the court below from a decree of the United States Circuit Court for the Eastern District of New York dismissing the bill alleging infringement of patent No. 605,177, granted June 7, 1898, to Emry Davis, for an inkstand. In the suit as originally brought infringement was also alleged of complainant's patents Nos. 399,844, granted March 19, 1889; 413,390, granted October 22, 1889; and 491,640, granted February 14, 1893. The court entered a decree ordering the bill dismissed as to all of the patents in suit on the ground of noninfringement. The complainant appealed, and on this hearing withdrew the appeal as to all the patents except No. 605,177.

In the specification of said patent the patentee states that this invention relates to the class of inkstands covered by prior patents granted to him, and that "the object of the invention is to provide an improvement on the form and style of inkstands covered by said patents, and one which is more simple in construction and operation, and also less expensive."

·. The claims are as follows:

"(1) An inkstand comprising the combination of an exteriorly-cylindrical air-filled funnel-float centrally-tubular, and an interiorly-cylindrical reservoir provided with a base, and in which the float closely fits to slidably engage the interior walls thereof, the said float being of a form and adapted to substantially wholly occupy the interior of said reservoir, whereby air is excluded from said fluid other than through the center of the float, substantially as shown and described.

"(2) An inkstand formed of a cylindrical body or reservoir provided with a base, 6, and an annular flange, 8, in combination with an exteriorly-cylindrical float substantially occupying the interior of the reservoir, and fitting wholly within the same, the said float being provided with an annular flange, 14, at top, adapted to rest upon and project above the flange, 8, of the reservoir, and the said float being vertically movable in and freely removable from the said reservoir. substantially as shown and described.

"(3) In an inkstand, a reservoir consisting of a cylinder open at the top, and provided with a closed lower end, supported by a base, in combination with a funnel float having exteriorly longitudinal and lateral dimensions and form approximately corresponding to those of the interior of the reservoir, ·substantially as shown and described.

"(4) In an inkstand, the combination with a reservoir having a uniform width at and upward from the bottom thereof, and open at the top throughout its width, of a centrally-tubular air-filled float having exterior longitudinal and lateral dimensions and form approximately corresponding to those of the interior of the reservoir, whereby the whole of said reservoir is occupied by the float, the said float normally resting upon the bottom of said reservoir and projecting above the top of the same, whereby it is adapted to deliver the ink from its lowest level without the top of said float being movable below the top of the reservoir or below the ink at its highest level, and the delivery of said float being wholly from the center thereof, said float fitting closely in the reservoir, whereby the walls of the same engage therewith.

"(5) An inkstand consisting of an interiorly-cylindrical vertical reservoir, and a hollow cylindrical air-filled float mounted therein and closely fitting said reservoir, and adapted to move vertically therein, and consisting of an outer tube, the upper end of which is closed by a conical cap, the base of which extends upwardly, and the apex of which extends downwardly and inwardly and is provided with a tubular extension which projects downwardly and centrally through said outer tube, said outer and inner tubes being each open at the bottom, the longitudinal and lateral dimensions of the float being substantially equal to the corresponding dimensions of the interior of the reservoir, substantially as shown and described.

"(6) An inkstand consisting of an interiorly-cylindrical vertical reservoir, and a hollow cylindrical air-filled float mounted therein and closely fitting said reservoir, and adapted to move vertically therein, and consisting of an outer tube, the upper end of which is closed by a conical cap; the base of which extends upwardly, and the apex of which extends downwardly and inwardly and is provided with a tubular extension which projects downwardly and centrally through said outer tube, said outer and inner tubes being each open at the bottom, and longitudinal and lateral dimensions of the float being substantially equal to the corresponding dimensions of the interior of the reservoir, and said reservoir being provided at the top thereof with an annular overflow chamber, the inner wall of which is formed by said float, substantially as shown and described.

"(7) In an inkstand the combination with a reservoir wholly open at the top, and interiorly-cylindrical, of an exteriorly-cylindrical hollow air-filled float, having a central vertical delivery, said float laterally fitting the walls of the reservoir, and longitudinally formed so that when resting upon the bottom of the reservoir it will project above the top of the same, the upper end of said float being provided with an annular flange whereby the upper portion of said float and said flange conjunctively form the closure of the open top of the reservoir.

"(8) An inkstand consisting of two parts, one adapted to receive the other within it, the same being wholly open at one end and closed at the other, said part forming the ink-reservoir, and the other part of the device being formed to telescope within said first part or reservoir, and closely fit the wall thereof, said part being of a length corresponding with the depth of the reservoir and being provided with a flange to limit the telescoping of the parts and permit their mutual detachment, said inner part being adapted to deliver or supply the ink, and being formed into a funnel at the top, into a float throughout its length, and into a tube throughout its center.

"(9) In an inkstand the combination with a float of the character described of a reservoir formed to receive the said float within it, and to closely surround the same, said reservoir being provided with a base on which said float is adapted to rest, and extending approximately to the top of said float, said reservoir being of a uniform width throughout the major portion of its interior, and being of an increased width at the top thereof to form a vertical annular groove or recess itself of uniform width, said upper recessed portion of the reservoir being wholly open at the top to permit the free insertion and removal of the float."

. The improvement covered by the patent chiefly consists, as stated by the patentee, in such a combination of a float with an interiorly-cylindrical reservoir, both of which were old, as dispenses with an outer supply reservoir and an interior feeding reservoir, and provides "a two-part inkstand, in which there are no covers, in which the reservoir is entirely open at the top, except for being closed by the float, as herein stated, and that these two parts are mutually detachable directly without manipulation."

The patents chiefly relied upon to support the defense of lack of patentable novelty are said prior patents Nos. 399,844, 413,390, and 491,640, granted to complainant, and patents Nos. 32,207 and 39,754, granted in 1861 and 1863, respectively, to Joseph W. Ross, and patents Nos. 425,672 and 425,674, granted in 1890 to J. Heberling.

The prior Davis patent 491,640 comprised an outer ink reservoir provided with an air-tight cover having an air vent and plug. A circular sleeve integral with said cover extended downward nearly to the bottom of said reservoir, and was open thereto. The ink from this reservoir passed through an aperture in the bottom of an ink tube identical in structure with that of the patent in suit, arranged to fit said ink sleeve and float in the surrounding ink. There

were many practical objections to the efficiency of this inkstand, chiefly because the whole operation of the stand depended upon the quantity of air in the air chamber, and was affected by variations in its temperature, and because it was necessary to manipulate the plug to meet the varying conditions. The only structural change covered by the fourth patent consisted in putting a flat closed bottom on the sleeve. The question is whether this change involved invention. This construction obviated the objections necessarily attendant upon the use of the air chamber and plug. It was simpler, more efficient, and more easily fitted and cleaned than the earlier Davis inkstands. The essence of the inventive conception consisted in the discovery that the functions discharged in this class of inkstands by the co-operation of the outer air chamber and reservoir with the inner sleeve, and for the discharge of which it had always been supposed that such co-operation was necessary, could be discharged by an inner sleeve alone, and in the practical utilization of this discovery by the mechanical expedient of inclosing its bottom. That this was not obvious is shown by the experience of this patentee with prior patents, and by the prior art in general.

In the earlier of the Ross patents, granted 40 years ago, the only reservoir shown is one having an aperture at the bottom, and its so-called float is only a small funnel floating on the top of the ink, which has to be pushed out of the way by the pen in order to reach the ink. One of the drawings of the second patent, however, shows the bottom of the reservoir closed. But there is no suggestion that such construction was considered practicable, or was designed for use, other than as illustration of the use of a new class of material for floats.

Heberling patents, Nos. 425,672 and 425,674, are only remotely relevant. They belong to the old class of fountain inkstands in which the air is fed from one reservoir to another by a positive stroke of a cup or bell.

We concur in so much of the opinion of the court below as holds that the patentability of the device results from its simplicity and the elimination of parts. The improvement is a narrow one. The prior art, however, fails to show such a structure, and, in view of the facts already stated, and its utility and success, we think the device of the patent in suit involved the exercise of the inventive faculty.

The construction of defendant's inkstand is substantially identical with that of the patent in suit, except that the interior reservoir is perforated, and is, therefore, open, as in the third Davis patent. It comprises also an outer ink reservoir, which supplies an additional means for filling the inner reservoir through the hole in its base. But the defendant places a washer of felt or other soft material in the bottom of the outer reservoir, which operates to seal the hole in the inner reservoir when filled with ink and ready for use. Consequently, when the inkstand is in use, the outer reservoir, thus equipped, serves only as a convenient support for the inner ink reservoir. This inkstand is manufactured according to the specifications of patent No. 661,334, to F. M. Ashley. It appears from the specifications and claims of said patent that, unless the hole in the inner reservoir is

sealed, the inkstand will not work. As is stated in the opinion of the court below, "If the aperture in defendant's tube were closed, and the ink were poured into it, it would be the device described in the letters." In these circumstances the question whether the structure of defendant is or is not an improvement on that of complainant is immaterial. Nor is it material that the improvement, if any, constitutes an additional element with an additional function. The inkstand, when in practical use, is identical in construction with that covered by complainant's patent.

Where infringement would naturally or necessarily result from the ordinary use of a device, a defendant cannot escape liability for infringement by merely showing the possibility of a different use. The decisive question is whether the operation of the alleged infringing device when in use is the same, and produces the same results. And the question herein is answered by showing how defendant's inkstand operates when it is filled and used, not what improved means may be added in order to fill it so as to be ready for use. Snyder v. Bunnell (C. C.) 29 Fed. 47; Westinghouse v. New York Air-Brake Company (C. C.) 59 Fed. 581, 597; Thomson-Houston Electric Company v. Kelsey Electric Railway Specialty Company (C. C.) 72 Fed. 1016.

The claims, with the exceptions of claims 1 and 3, cover details of construction not found in defendant's device, such as the "annular flange" of claim 2, or the flange to limit the telescoping of the parts of claim 8, or constructions which do not correspond with the specification and drawings, such as the "float nominally resting upon the bottom of said reservoir" of claims 4, 7, 8, and 9. The defendant's inkstand infringes the broad combination covered by claims 1 and 3.

The decree of the court below is reversed, without costs, with directions to the court below to enter a decree in accordance with this opinion.