## GENERAL MFG. CORPORATION v. GRAY et al.
### No. 1073.

District Court, W. D. Oklahoma.
March 21, 1931.

J. S. Estes, Frederick B. Owen, and E. E. Blake, all of Oklahoma City, Okl., for plaintiff.

Edward Spiers, of Oklahoma City, Okl., and Arthur C. Brown, of Tulsa, Okl., for defendants.

KENNEDY, District Judge (of Wyoming, sitting in the Western District of Oklahoma).

The above-entitled cause is before the court upon a citation for contempt particularly directed to two of the defendants, Lyman J. Gray and W. H. Coyle. A sketch of the history of the litigation and the transactions involved will be necessary for the proper consideration of the controversy.

One Jacob Young of Oklahoma, the inventor, made application for patent upon a mechanical ball game for which thereafter and on May 14, 1929, letters patent No. 1,-713,247 were issued to General Manufacturing Company, his assignee and plaintiff herein. Some time thereafter in the same year, a controversy arose between the plaintiff and a number of defendants, including those against whom relief is here sought, claiming infringement of plaintiff's patent together with the uses of apparatus of defendants in the manufacture of the patented machine. Before the suit came to trial a compromise was effected between the litigating parties, or such of them as were actually interested in the litigation, and an agreement perfected whereby the defendants in interest here were by a written contract given certain privileges and rights, presumably as licensees, to manufacture and sell the patented machine in certain designated territories and under certain prescribed conditions. Terms were provided by which the plaintiff would receive certain consideration from the sales thereof. Thereupon a consent decree was entered in said infringement suit by the terms of which defendants were restrained and enjoined from any infringement of plaintiff's patent. The evidence tends to show that the defendants here attacked thereupon proceeded with the attempted manufacture and distribution of the plaintiff's apparatus which they claim did not result satisfactorily. Some difficulty evidently arose in the set-up of the machine, and the inventor Young, whose interests were aligned in the proceeding with those of the plaintiff, was taken into the manufacturing plant for the purpose of aiding in the mechanical development of the patented apparatus. Some time thereafter, and when the breach between the plaintiff and defendants had widened considerably through the alleged failure to pay royalties and properly label the few machines which were turned out in accordance with the demands of the plaintiff, the defendants began the manufacture of another machine in conjunction with one Carpenter, who purported to invent such machine and make application thereon for a patent. A company was organized in which the defendants are actively interested. Thereupon in September, 1930, the plaintiff made an application for a citation against the defendants Emenhiser, W. H. Coyle, and Gray as for contempt on account of their alleged acts amounting to a violation of the injunctional order contained in the final decree heretofore referred to. At the trial, the proceeding against the defendant Emenhiser seemed to have been dropped, as he did not appear to have been longer connected with the alleged infringement. A citation was issued by the court, and upon its return the defendants W. H. Coyle and Gray appeared and made a response which in substance admits the former decree and the contract and alleges that the machines attempted to be manufactured under plaintiff's patent were inoperative and unsaleable, which frailties the plaintiff was unable to correct, although repeatedly requested by defendants so to do. They further allege that the machine which they are now manufacturing is a different machine from that covered by plaintiff's patent and in no way an improvement upon or an infringement of plaintiff's device, but that it is a machine being manufactured as an invention of one George W. Carpenter for which an application for patent is pending.

The case thereupon proceeded to a hearing upon the citation and the response of the defendants W. H. Coyle and Gray. At the hearing the issues were narrowed to the consideration of two points by counsel for defendants, the first being to the effect that the plaintiff had not pursued the proper remedy, it being the contention of counsel for the defendants in this respect that the remedy of the plaintiff was properly a suit at law upon the contract which purported to cover and regulate the relations between plaintiff and defendants concerning the manufacture of plaintiff's apparatus. This position on the part of defendants I hold to be untenable, for the reason that the issue tendered by the application and citation is solely one of infringement which contemplates the manufacture and distribution of a slightly different machine than that of plaintiff's but so similar as to represent but a colorable imitation. Likewise the response of the defendants' in substance meets this tendered issue. If there should be a determination of infringement, the matter of stipulated amounts set forth in the contract might possibly govern the question of damages as to manufactured and distributed machines. The second issue, as indicated is, whether or not the machine admittedly manufactured by the defendants is an infringement of plaintiff's patent, and to this issue the attention of the court will therefore be directed.

At the outset, for a judge rather inexperienced in patent law, a surprise was occasioned by the fact that counsel devoted such slight attention in argument and brief to the scope of an investigation upon a con-

tempt proceeding in patent cases. This may have been based upon the erroneous presumption that one called to sit in a case of this character was already advised. However, it appears to me important to analyze the nature of the proceeding here for a correct solution of the main infringement issue. A brief review of the authorities will be helpful.

In California, etc., Paving Co. v. Molitor, 113 U. S. 609, on page 618, 5 S. Ct. 618, 622, 28 L. Ed. 1106, a contempt proceeding in a patent case, Mr. Justice Bradley, speaking for the court, says: "It is a question which the circuit court must decide for itself in the ordinary way. If the judges disagree there can be no judgment of contempt; and the defendant must be discharged. The complainant may then either seek a review of that decision in this court, or bring a new suit against the defendant for the alleged infringement. The latter method is by far the most appropriate one where it is really a doubtful question whether the new process adopted is an infringement or not. Process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct."

In Crown Cork & Seal Co. v. American Cork Specialty Co., 211 F. 650, on page 653 (C. C. A. 2), the following language is found: "Complainant moved to attach for contempt because of the use of this reorganized machine. It has been the practice in this circuit (Bonsack Machine Co. v. National Cigarette Co. [C. C.] 64 F. 858) not to deal with modifications of a machine held to be an infringement, on motions to punish for contempt, unless the change was plainly a mere colorable equivalent; if the change was substantial, fairly arguable as to its being covered by the patent, it has been the practice to leave the patentee to an application to enjoin its use."

In Charles Green Co. v. Henry P. Adams Co., 247 F. 485, at page 486 (C. C. A. 2), Judge Hough observes:

"The practice of reaching evasive and persistently infringing defendants by supplementary injunction we have already substantially approved. Read Machinery Co. v. Jaburg, 223 F. 1022, 138 C. C. A. 659. That approval we reiterate, but the propriety of granting such relief should be ascertained with due regard to settled rules regarding alleged contempt of patent injunctions.

"Modifications of enjoined devices have not been dealt with on motions to punish for contempt 'unless the change was a mere colorable equivalent' (Crown Cork, etc., Co. v.

American, etc., Co., 211 F. 653, 128 C. C. A. 154)."

In the more recent case of Electro-Bleaching Gas Co. v. Paradon Engineering Co. (D. C. N. Y.) 15 F.(2d) 854, at page 855, the court says: "The plaintiffs must establish the law and the facts relied on to make out the alleged contempt; but, as this is a proceeding to have the defendant adjudged guilty of a civil contempt, I am not prepared to say that the plaintiffs must establish their case beyond all reasonable doubt. Gompers v. Buck's Stove & Range Co., supra [221 U. S.] at page 444 (31 S. Ct. 492 [55 L. Ed. 797, 34 L. R. A. (N. S.) 874]). But the burden is heavy on the plaintiffs, and where there is reasonable ground to doubt as to the wrongfulness of the conduct of the defendant, it should not be adjudged in contempt. California Artificial Stone Paving Co. v. Molitor, 113 U. S. 609, 5 S. Ct. 618, 28 L. Ed. 1106; Hanley v. Pacific Live Stock Co., 234 F. 522, 148 C. C. A. 288; General Electric Co. v. McLaren (C. C.) 140 F. 876."

One of the most concise and clear statements of the rule, evidently well supported by authority, is made by District Judge Pollock of Kansas in the case of Wire Rope Appliance Co. v. Eureka Tool Co. (D. C.) 256 F. 677, on page 678, in his pronouncement:

"The entire question of infringement in this case has passed to final decree absolute; hence no such issue is here raised, or may be determined. True, if the defendant and its officer here proceeded against are, and since the decree herein entered against them have been, engaged in good faith in making and vending a socket so different in its character and nature from the infringing device defendant was enjoined from making, vending, and using by the final decree herein as not to fall within the issues of the case in which the decree was entered, in such case it would be the duty of plaintiff to file a new bill to have such determination made, and the application for contempt denied. Howard v. Mast, Buford & Burwell Co. (C. C.) 33 F. 867; Temple Pump Co. v. Goss Pump & Rubber Bucket Manuf'g Co. (C. C.) 31 F. 292; Crown Cork & Seal Co. v. American Cork Specialty Co., 211 F. 650, 128 C. C. A. 154; Kelsey Heating Co. v. James Spear Stove & Heating Co. (C. C.) 158 F. 414; Bonsack Mach. Co. v. National Cigarette Co. (C. C.) 64 F. 858.

"On the other hand, if the change made from the original infringing device is merely colorable, and not substantial, and a court can clearly see the obvious intent of those enjoined from infringement was to further in-

fringe upon the rights protected by the decree and thus escape punishment for wrongdoing, contempt will be adjudged. Frank F. Smith Metal Window Hardware Co. v. Yates, 244 F. 793, 157 C. C. A. 241; Davis v. Perry, 120 F. 941, 57 C. C. A. 231; New York Scaffolding Co. v. Whitney, 224 F. 452, 140 C. C. A. 138; Leeds & Catlin v. Victor Talk. Mch. (No. 2) 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816; Parsons Non-Skid Co. v. Atlas Chain Co., 198 F. 399, 117 C. C. A. 286.

"The question thus raised is this: Do the appliances themselves in evidence in this case and the proofs adduced on this hearing clearly show the change made by defendant and its president, Towne, to be such a mere colorable mechanical equivalent as will be disregarded in this proceeding for contempt?"

Clearly, then, the issue in the case at bar is not solely the question of infringement which might be determined in a new proceeding or one supplemental to plaintiff's original suit, but it is whether or not the invention and device which it is claimed the defendants are manufacturing and selling is merely a colorable equivalent or imitation of plaintiff's patented device.

Proceeding therefore to an investigation of the principal issue in the light of these authorities, we are confronted with the contention of the plaintiff that under the law of patents laid down in Title 35 USCA, § 69, which provides that only upon giving thirty days' notice in writing to the plaintiff the defendant may prove on the trial that plaintiff's device had been patented or described in some printed publication prior to his supposed invention or discovery thereafter for more than two years prior to his application for patent therefor, and the defendants not having given said thirty days' notice are precluded from offering testimony in regard to the prior state of the art through evidence of prior patents. In regard to this, the defendants respond that under a construction by the courts this estoppel is a limited one and does not restrict against evidence to assist the court in determining the scope of the patent. Authorities supporting this view are 48 C. J. p. 356, which says:

"Under general issue defendant may show the prior state of the art, that plaintiff's device is not operative, or matters, other than statutory defenses, which affect the validity of the patent and cannot well be made the subject of a special plea; and he may give in evidence the act of congress relating to patentability.

"Statutory defenses. Under the statute providing for proof at the trial of certain special matters of defense, all relating to the validity of the patent, where defendant has given previous written notice thereof, such matters are admissible in evidence for the purpose of defeating the patent where they have been pleaded or sufficient statutory notice thereof has been given; but not otherwise, unless notice thereof is waived, as by failure to object to the reception of the evidence. However, matters which are inadmissible under the foregoing rule for the purpose of showing the invalidity of the patent may nevertheless be admissible to show the state of the art and to aid in the construction of the patent."

In Brown v. Piper, 91 U. S. 37, at page 41, 23 L. Ed. 200, is found the following language:

"There is another view of the case that may properly be taken.

"Evidence of the state of the art is admissible in actions at law under the general issue without a special notice, and in equity cases without any averment in the answer touching the subject. It consists of proof of what was old and in general use at the time of the alleged invention. It is received for three purposes, and none other,—to show what was then old, to distinguish what was new, and to aid the court in the construction of the patent."

See, also, Grier v. Wilt, 120 U. S. 412, 7 S. Ct. 718, 30 L. Ed. 712, in which the pertinent syllabus reads as follows: "In a suit in equity for the infringement of letters-patent, prior letters-patent, though not set up in the answer, are receivable in evidence to show the state of the art, and to aid in the construction of the claim of the patent sued on, though not to invalidate that claim on the ground of want of novelty, when properly construed."

We therefore arrive at the conclusion, in the light of these authorities, that prior patents and the file wrapper of plaintiff in connection with his patent are admissible in this proceeding, not for the purpose of invalidating plaintiff's claim on the ground of want of novelty, but for the purpose of distinguishing what was at the time then old and what was new and to properly assist the court in the construction of the patent.

Having proceeded this far in the analysis of the limited scope of the issue and the evidence admissible to determine that issue, we shall proceed to consider plaintiff's patented

606

machine and the defendants' alleged infringing machine.

Plaintiff's specifications outlined in patent No. 1,713,247, in lines 1 to 31, inclusive, read as follows:

"This invention relates to mechanical ball games, and particularly to a mechanical basketball game.

"The general object of the invention is to provide a miniature basketball court enclosed in glass and having the similitudes of baskets at the opposite ends of the glass case, and provide manually controllable means whereby the ball may be shifted from one end of the court toward the other by one player or in a reverse direction by the other player and whereby the ball may be discharged upward, if possible, to make a goal from the field.

"A further object is to provide a device of this character having the floor of the case formed to provide a plurality of depressed portions, each depressed portion having a cup-shaped center in which the ball will lodge, each cup-shaped depression having a kicker or finger disposed therein, half of the cups having their kickers connected to one operating means for one player and the other half of the cups having their kickers operatively engaged with another operating means operated by the other player, the kickers or fingers being so disposed that when it is operated it will tend to throw the ball from one cup to another cup of the same players and so on until the ball is in position for a try for goal."

The alleged infringing machine is similar in mechanical equipment and general design, with the exception that the substantial difference between the two machines is that while plaintiff's machine is designed to kick the ball in a diagonal course across the field through the cups of a corresponding series where the basket may be thrown from two cups, the defendants' machine is so arranged that the attempt is made to throw the desired basket from each and every cup of its own series. As is stated in the patent, the device is intended to simulate a basketball game, and in this respect experts testify in this hearing that there are, speaking generally, two different methods of playing such a game in a genuine contest with living players. One is known as "nursing" or "dribbling" the ball across the field toward the desired goal until a player near the basket is better able to accomplish the result than by a long throw. This method is the one commonly in use, as was testified among the more skilled teams.

The other method is where the players usually without such nursing or dribbling attempt to throw baskets from any point where the player may be located without particular regard to his proximity to the basket, which the expert professional coaches in basketball denominate the "amateur" or "dub" game.

On first impression, the similarity would be so close that one might easily say that the second is clearly an imitation of the first. A closer scrutiny, however, is needed if we are required to examine the prior state of the art with respect to former patents, together with the representations of the plaintiff patentee prior to the issuance of his patent concerning the scope of his patented machine. It appears from the file wrapper in connection with plaintiff's patent, that certain claims of plaintiff were rejected in the light of six prior patents for similar devices. Only three of the claims of plaintiff were allowed, to wit: Claims 5, 6, and 9, whereupon the plaintiff amended his claims and upon such amended claims the patent was granted. At the same time the patentee made representations to the Patent Office in the way of remarks which indicated the distinction between his device and that shown by patents already granted to others for similar devices. In the amended claims, claim 5 as allowed was made claim 1, in which the following language appears: "Said kickers being so arranged as to project the ball in the general direction of the next succeeding cup of a series." Original claim 6 allowed was thereafter incorporated in the amended claims as No. 3, in which the following language appears: "The kickers of one series being arranged to discharge the ball from a cup of one series to an adjacent cup of the same series and into the corresponding goal." In original claim 9, which as amended became claim 6, the following language appears: "The kickers of one series of cups being arranged to direct the ball from one cup of a series to the next adjacent cup of the series in a direction toward one end of the casing." It must therefore be apparent that this particular feature of plaintiff's patented machine, in each instance directing the ball in a diagonal course across the field from one cup of a series to the next succeeding cup of the same series until the ball is in a position to be thrown from a cup designed only for the purpose of throwing the basket, is an integral part of plaintiff's device.

Further, it appears by the former patents introduced in evidence, to which reference was made by the Examiner passing upon plaintiff's patent and respecting a portion of

the claims, that there was no expression of the "nursing" game at the time in case of the Smith, Bush, Johnson, Biertuempfel, and Garver patents, many features of which otherwise resembled in mechanism and result the features of plaintiff's machine, and as a consequence the scope of plaintiff's patent in view of this prior state of the art was considerably limited. The contention of defendants is not that plaintiff did not have a patentable device which was novel, nor do they now attempt to dispute the patentability of plaintiff's device, but they contend that in view of the prior state of the art and in view of the limitations imposed upon plaintiff, the scope of his patent is so limited that he cannot now assert an alleged infringement on the part of defendants. The defendants contend that the rule which should be invoked is fairly laid down in the case of Barley v. G. E. Witt & Co. (C. C. A.) 261 F. 77, at page 84, where the court says:

"We are unable to expand the claims of the patent in question beyond the fair meaning of their terms, and we cannot find that identity of mechanical elements, as well as identity of function, necessary to sustain the charge of infringement. Notwithstanding the fact that there are the same mechanical elements present in the device of the patent in suit as in the construction of appellants, the manner of operation described in the patent claims determines whether there has been infringement; and, as we understand it, appellants do not use the manner of operation described by the patent claims.

"Believing, therefore, that there is a lack of substantial identity between the combinations in respect to their capacity to do the same work in substantially the same way, appellants are not shown to infringe. Westinghouse Co. v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; Pittsburgh Meter Co. v. Pittsburgh Supply Co., 109 F. 644, 48 C. C. A. 580; Westinghouse Air Brake Co. v. New York Air Brake Co., 119 F. 874, 56 C. C. A. 404; Imperial, etc., Co. v. Crown Cork & Seal Co., 139 F. 312, 71 C. C. A. 442; Thacher v. Transit Co. (D. C.) 228 F. 905."

The thought is also expressed in the case of Fuller v. Yentzer, 94 U. S. 288, at page 296, 24 L. Ed. 103, where Mr. Justice Clifford, in speaking for the court, says:

"Valid letters-patent undoubtedly may be granted for an invention which consists entirely in a new combination of old elements or ingredients, provided it appears that the new combination of the ingredients produces a new and useful result; but the rule is equally well settled that the invention in such a case consists merely in the new combination, and that a suit for infringement cannot be maintained against a party who constructs or uses a substantially different combination, even though it includes the exact same elements or ingredients, if the combination is in fact new and useful, and substantially different from the one which preceded it. Gill v. Wells, 22 Wall. 14 [22 L. Ed. 699].

"Such an invention, if it produces a new and useful result, is the proper subject of a patent, and such a patent is valid and operative; but the right of the patentee under it differs in one respect from those of a patentee for an invention which consists of an entire machine, or of a new and useful device, as the rights of a patentee for a mere combination of old ingredients are not infringed, unless it appears that the alleged infringer made, used, or sold the entire combination. Gould v. Rees, 15 Wall. 194 [21 L. Ed. 39]; Prouty v. Ruggles, 16 Pet. 341 [10 L. Ed. 985]; Vance v. Campbell, 1 Black, 428 [17 L. Ed. 168]."

There remains to be considered the representations and statements made by the patentee plaintiff in the matter of securing a patent, which are pertinent in determining its scope. Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 29 L. Ed. 723; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335. In the latter case, on page 443 of 272 U. S., 47 S. Ct. 136, 141, 71 L. Ed. 335, the late Mr. Justice Sanford, speaking for the court, said:

"It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Shepard v. Carrigan, supra [116 U. S. 597, 6 S. Ct. 493, 29 L. Ed. 723]; Hubbell v. United States, 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95. Whether the examiner was right or wrong in rejecting the original claim, the court is not to inquire. Hubbell v. United States, supra [179 U. S. 83, 21 S. Ct. 24, 45 L. Ed. 95].

The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 598, 6 S. Ct. 493, 29 L. Ed. 723; Hubbell v. United States, supra [179 U. S. 85, 21 S. Ct. 24, 45 L. Ed. 95]. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 S. Ct. 627, 38 L. Ed. 500. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to a disclaimer.' Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 603, 65 L. Ed. 1162.

"It results that as the claims in suit were limited by the proceedings in the Patent Office to the specific form of a three-point contact lift, they are not infringed by the heels made by the Essex Company, which are not three-point contact lifts, their upper side edges having no vertical curve and lying entirely in the same horizontal plane as the rear edge and breast corners. Nor can they be held to be infringements even if we assume that, as asserted, they function in the same manner as three-point contact lifts, and would infringe, as was conceded in the District Court, if the claims were not restricted by the limiting clause and were entitled to a construction warranting a wide range of equivalents. By the limitation of the claims in the Patent Office proceeding to the three-point contact lift the patentee made this precise form a material element, and having thus narrowed the claims, cannot, as was said in the Weber Electric Company Case, now enlarge their scope by a resort to the doctrine of equivalents. This would render nugatory the specific limitation." 

While, strictly speaking, it may not be contended that the plaintiff in the matter of securing his patent injected a new element in his amended claims known here as the "nursing" or "dribbling" element, yet it does appear that he relied upon this feature as distinguishing it from other devices already patented or known to the art as being generally capable of the same general results. On page 3 of plaintiff's response to the action of the Patent Office in rejecting a portion of plaintiff's claims, the following representations were made: "A nearer citation is the patent to Bush which is in some respects similar to applicant's ball game in that there is a field provided with cups arranged in two series with a plurality of ball projectors arranged in two series each series of projectors being adapted to be operated by corresponding handles, but these projectors are not arranged to project the ball diagonally or in other words in the general direction of the opponent's goal but diagonally across the field nor is there a projector arranged on the median line of the board and adjacent the goal whereby a goal may be made as called for in the last two claims nor are the cups arranged in two series in staggered relation to each other and alternating with cups of the other series."

On page 4, in discussing the features of other patents cited by the examiner, the patentee says: "The kickers or strikers are entirely different, the mechanism whereby the game is played is different, the ball is not kicked diagonally across the field from a pocket of one series to a pocket of the next series or in that direction."

From this undisputed evidence it would appear that one of the principal features upon which the plaintiff relied for a patent, in distinguishing his invention from that of previous patentees, was the kick of the ball diagonally across the field from cup to cup of the same series and attempting to discharge the ball from certain cups in close proximity to the desired basket as representing the so-called "nursing" game of basketball.

In view of this development of the entire evidence in the case, I feel unwilling to say that the alleged infringing device of the defendants is a mere colorable equivalent or imitation upon which to base a finding of contemptuous conduct in violation of the original decree of the court; especially in view of the fact that the two devices, when considered in the light of purporting to simu-

late a basketball game, are really intended to play such a game by different methods. The case is at least close enough in my opinion so that the question of infringement under the authorities ought to be determined in a proper proceeding brought for that purpose.

For the reasons stated, the defendants will be discharged from the alleged citation for contempt, and findings of fact and conclusions of law with an appropriate decree in accordance with the views herein expressed may be submitted within thirty days from the date of this memorandum, reserving to the plaintiff proper exceptions.