**BEAUCHAMP et al. v. SCHIRESON et al.**

No. 190–M.

District Court, S. D. California, Central Division.

Feb. 18, 1937.

Mark L. Herron and Edward A. Penprase, both of Los Angeles, Cal., for complainants and intervener.

Hazard & Miller and Fred H. Miller, all of Los Angeles, Cal., for defendants.

McCORMICK, District Judge.

This is a suit in equity for infringement of patent No. 1,808,756, granted July 9, 1931, to George D. Beauchamp, for improvement in stringed musical instruments.

The defenses urged at the hearing and in the briefs are substantially: (1) Invalidity of the patent; (2) lack of invention and novelty; and (3) no infringement by defendants. There are other defenses pleaded, but they have been either abandoned or no substantial evidence has been produced in support of them.

The patent contains thirteen claims, but only claims 1, 3, 4, 5, 6, 7, 8, 9, and 12 are in issue in this suit.

At the outset it is conceded that the grant is not that of a pioneer patent creating a new art, but complainants contend that the invention disclosed and claimed in the patent is a substantial and useful advance in the art of amplifying stringed musical instruments, and that under the rule stated in Eibel Process Company v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 328, 67 L.Ed. 523, the patent should be broadly and liberally interpreted. The rule adverted to is expressed by the Supreme Court as follows: "In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. It is this differing attitude of the courts toward genuine discoveries and slight improvements that reconciles the sometimes apparently conflicting instances of construing specifications and the finding of equivalents in alleged infringements. In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery, which has substantially advanced the art. His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine may be very meritorious, and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers, and certainly finds no reason to withhold from the really meritorious improver, the application of the rule 'ut res magis valeat quam pereat,' which has been sustained in so many cases in this court."

It is primarily asserted by complainant that the court should begin its considera-

tion of this controversy with the presumption that the patent in suit is valid. The defendants say that under the concrete situation that is presented by the record no presumption of validity can be invoked.

When an application for patent has been thoroughly examined by the United States Patent Office and thereafter such agency of the government duly issues letters patent, the grant thus made is impressed with the presumption of novelty, and the burden of defeating the patent rests upon defendants. Stoody Company v. Mills Alloys (C.C.A.9) 67 F.(2d) 807; Anraku v. General Electric Co. (C.C.A.9) 80 F.(2d) 958; Anderson v. Eastman (D. C.Cal.) 16 F.Supp. 513.

We think no presumption of validity has attached to the Beauchamp patent, No. 1,808,756, by reason of its issuance.

The file wrapper that is in evidence discloses merely scant consideration of the prior art, and although Beauchamp was working in what patent law characterizes as a crowded art, yet only one reference is made by the Examiner, that of a British patent, No. 18,898, to McMillan, issued June 1, 1912, and upon which one of Beauchamp's original claims was rejected. If the prior state of the art in question had been thoroughly examined or even carefully inspected it would have disclosed other earlier domestic and foreign patents that are in the record before this court that approach much more closely than McMillan to a solution of the problem that engaged the attention of Beauchamp and that illuminated the field of his concept and discovery. Notable among such prior patents are three to J. Dopyera, No. 1,741,453 granted December 31, 1929; No. 1,750,881 granted March 18, 1930; and No. 1,762,617 granted June 10, 1930, each for stringed musical instruments. No consideration or mention is given to these references or to the French patent to Donboli, No. 590,521, for violin with oriental sonority, granted March 19, 1925, and published June 18, 1925.

These four patents, considered jointly come close to disclosing and reading upon many of the features or elements of Beauchamp. They should have been considered by the Patent Office before allowing all of the claims that are in issue, and they must be considered by this court as an aid in the construction of the patent in suit. Grier v. Wilt, 120 U.S. 412, 7 S.Ct.

718, 30 L.Ed. 712; Morton v. Llewellyn (C. C.A.9) 164 F. 693.

The problem of producing amplifying stringed instruments engaged the attention and effort of inventors as early as 1889. It was found that the tones of violins, guitars, ukuleles, mandolins, and like instruments could be amplified, made sweeter and more pleasing by the employment and placement of different forms, compositions, and numbers of diaphragms and resonators in combination with the conventional bridge which supports the strings in such instruments. This discovery challenged the art to produce an instrument that would accomplish the best tone results in a simple, economical, and attractive manner.

After stating that his invention relates particularly to stringed musical instruments of the guitar or banjo types, Beauchamp says that his object "is to provide an instrument of the character mentioned in which a single resonator or amplifier is provided, and which will be simple in construction, economical in manufacture, and which produces tonal values not capable of being produced in other stringed instruments of the same type.

"Another object is to provide an instrument of small and convenient size·having a single metallic resonator of conical form and improved means for connecting the resonator with the strings, whereby the vibrations from the strings may be more effectively transmitted to and amplified by the resonator, than by other means in use.

"A further object is to provide in a stringed musical instrument an improved type of metallic resonator and bridge connecting the resonator with the strings."

And in describing the progressive step or improvement by which the patent has advanced the art, Beauchamp states:

"Heretofore, instruments of this type have been constructed with a plurality of resonators of substantially smaller size than shown in the drawings relating to this particular device. Also, the bridge which connects the strings with the resonators has been either directly or indirectly connected with the apices of the resonators at single points only. In this device, however, by the employment of a circular tensioning member A which engages the bead 16 or the cone for preferably the full extent of the circle of contact, the vibrations are more effectively transmitted to the resonator R than would

otherwise be possible, and a satisfactory instrument may be provided with a single resonator instead of a plurality of resonators.

"It will be observed from the foregoing description and the consideration of the drawings of my invention, that I have provided a simple, compact, economical, and efficient musical instrument with amplified tonal qualities unusual to instruments of this type."

There can be no doubt under the evidence that the Beauchamp patent in suit has been useful and commercially profitable and successful. It is shown that over 32,000 instruments embodying the invention disclosed in this patent have been sold by the complainant. This wide business use of the patented musical instrument strengthens the claim that the Beauchamp disclosures amount to invention.

After specifying and describing a conventional body, neck, strings, tail piece, top, curved sides, and central opening of a guitar type of stringed musical instrument, the patent recites:

"An annular ring 8 of wood or metal is mounted internally of the body and is attached to the top 2 and the cover plate 6 by means of screws or brads 9. Said ring is shallower than the body of the instrument and may have attached to its lower edge by suitable means a thin metallic ring 10, which is supported at a plurality of points on posts 11, 11 etc., having their lower ends resting upon the bottom 1. The ring 10 also rests upon the neck portion 4 and has a large central opening 12 concentric with the opening 7 of the cover plate 6. The ring 10 projects inwardly from the band 8 so as to provide a ledge upon which the circular edge of a metallic resonator R is adapted to rest. Said resonator is of substantially conical form and is made of thin sheet metal, preferably aluminum, so thin in fact that it is readily flexible and yet sufficiently firm to maintain its shape when mounted in operative position in the instrument.

"An annular bead 13 is formed at the outer edge of the resonator, which engages the upper side of the ring 10. Inwardly of the bead, the resonator is bent at 14 so as to provide a slightly angular portion in cross section to permit of the ready flexing and vibration of the metal.

"Centrally of the opening 7 in the cover plate 6, and substantially in the plane of said plate, the upper portion 15 of the resonator is formed with an annular bead or ridge 16 therearound. and the top of the cone is depressed internally of the bead. The plane of the strings S is substantially above the plate 6, and in order to transmit the vibrations from the strings to the resonator I provide a circular bridge member A which may have a flat bass portion 17 adapted to rest upon the bead 16 and to be attached thereto by rivets 18.

"The member A may also be provided with a transverse diametrically disposed rib 19 which may or may not be notched, for receiving the strings S, S etc. Thus the rib or bar 19 of the member A constitutes a bridge for holding the strings in tension, and said bar may be formed integrally with or apart from the member A as shown, for direct contact with the strings.

"I have found that by the use of a single resonator and a circular tensioning member, as shown at A, the vibrations from the strings are readily transmitted to the resonator R and the resonator when so connected with the strings serves to substantially amplify the vibration set up in the strings, and the tonal qualities of the instrument are accordingly substantially improved.

"I prefer to employ a guard 21 extended transversely of the instrument over the bridge A and attached at its ends 22, 22 by suitable means to the cover plate 6. Said cover plate is provided with a plurality of screened openings 23, 23 etc., from which the vibrations from the instrument emanate.

"It will be observed that the resonator R is held in position by the tension of the strings and is not at any point secured to the supporting members. Due to this fact, by the removal of the cover plate 6, the members A and R may be readily replaced, removed, or repaired.

"In the construction of an instrument of this character, I have found it important in order to transmit the vibrations from the strings to the resonator and to produce a maximum volume in the instrument, that the member A should be firmly held in contact with the resonator as at the bead 16 throughout the extent of the annular portion 17. Accordingly the member A is made of substantial diameter."

Nothing has been presented before the court that discloses and imparts any description of the single resonator amplifying stringed instrument that is specified

and illustrated by drawings in this Beauchamp patent in suit. Many references are cited, but all that have any real bearing upon the problem solved by the patent under consideration contain a plurality of conical resonators, position or support the bridge on a spider or by means of a metallic spring, dispose the bridge at the apex of a conical resonator at single points only, or present a grotesque and unattractive appearance.

There does appear in J. Dopyera, No. 1,762,617, a statement that the main object of the invention therein claimed is "to provide a stringed instrument in which instead of the usual membrane or skin, I have provided one or more thin sheet metal resonators, preferably of aluminum, on which the bridge supporting the strings of the instrument is mounted. Thus the vibrations set up in the strings of the instrument when the same is being played can be transferred to the one or more resonators and amplified substantially, for providing a louder tone and more resonant qualities than can ordinarily be provided by the employment of the usual membrane or skin." And further that "It will be understood in the consideration of this invention that while I have shown an arrangement of resonators and a structure embodying three, four and five of such resonators, that I may vary the number and change the form of the body of the instrument as the number of resonators are varied. For instance an instrument of the ukulele or banjo ukulele type may be constructed in accordance with my invention, in which case but a single resonator is employed for supporting the bridge on which the strings are held in tension."

And while this patent also suggests the importance and merit of an element in the Beauchamp combination which specifies a bridge engaging the strings and having an annular portion making annular contact with the resonator for tensioning the strings and transmitting vibrations from the strings to the resonator, by the following language: "I have also discovered that the provision of the annular beads 8 of angular cross section near the margins of the resonators substantially amplify the vibrations set up in the resonators. This is due to the fact that the edges of the resonators are tightly held and the beads 8 provide readily yieldable annular portions intermediate the margins and the cones which permit of a maximum resiliency of the cones and render the resonators more delicate and sensitive to the vibrations set up therein;" nevertheless this Dopyera patent does not specify, disclose, or illustrate how the single resonator type is to be made or operated.

It is one thing to hint at or suggest the solution of a problem that advances an art, and quite another thing to solve the problem by producing an instrumentality that takes the forward step. Dopyera did the former; Beauchamp accomplished the latter.

We are impelled to conclude from the state of the art at the time of Beauchamp's application for the patent in suit and from the entire record before us that his concept and disclosures embodied in Letters Patent No. 1,808,756 marked a substantial, useful and progressive step in the art of amplifying stringed musical instruments, and this, under the Eibel Case, supra, amounts to invention.

If Beauchamp was the first to invent a useful and commercially successful single conical metallic resonator amplifying, attractive stringed musical instrument, and the record in this suit persuades us that he was, then he is entitled to liberal treatment in a court of equity in the construction of the claims of his patent, to the end that he may enjoy the fruits of his invention. To limit him unnecessarily to form or one element in his combination would enable others to reap the substantial benefit that only an inventor or his assignees or licensees may enjoy.

Each claim that is in issue except claim 12 describes the shape of the resonator as "conical" and it is argued from the use of this word that all claims employing it have limited the invention disclosed in the patent to true cone-shaped resonators and that where a resonator not truly conical is employed the claims referred to are not wrongfully invaded. We think this argument has no merit. The patent cannot be so limited.

Attention has been directed earlier in this memorandum to the wording of the patent that describes an object of the invention "to provide an instrument of small and convenient size having a single metallic resonator of 'conical form,'" etc., and further on in the description the following enlargement of form designation of the resonator appears: "Said resonator is of *substantially* conical form and is made of sheet metal, preferably aluminum, so thin in fact that it is readily flexible and yet

sufficiently firm to maintain its shape when mounted in operative position in the instrument." (Italics added.)

■ These specifications cannot be emasculated from the claims but must be read as interpretative of the invention that is claimed in the patent. It is to be further noted that the state of the prior art does not justify the conclusion that the invention embodied in the patent is solely as to the form or shape of a resonator. We are dealing with a novel combination wherein the resonator is but one element, and all co-operating agencies and elements of the entire amplifying stringed musical instrument disclosed which conjointly produce new results or an old result in a better manner must be considered. Stoody Co. v. Mills Alloys, supra. Moreover, the shape or form of two instrumentalities in a combination or assembly may visually appear different and unlike, and yet from the principles of physics that are involved the two may and often do pursue the same mode of operation and accomplish the same result. Under such circumstances the one who copies a combination by fabricating an instrumentality to look different to the untrained eye has not avoided infringement. Winans v. Denmead, 15 How. 330, 14 L.Ed. 717.

Our Circuit Court of Appeals, in Angelus Sanitary Can Machine Co. v. Wilson, 7 F.(2d) 314, 318, has announced a rule that is applicable to the argument of defendants that is under discussion at this point, in the use of the following language: "Defendants therefore cannot escape infringement by adding to or taking from the patented device by changing its form, or even by making it somewhat more or less efficient, while they retain its principle and mode of operation and attain its results by the use of the same or equivalent mechanical means."

The evidence in this record clearly shows that in operable guitar assemblies the mode of operation of metallic resonators of the true conical shape or of a modified conical form, such as concavo-convex metallic resonators with substantial spherical surfaces, is essentially the same, regardless of whether the resonators are mounted with their bases upward or with their bases downward.

This proof was made by the testimony of qualified sound engineers after they had made exhaustive laboratory tests and findings, and was supplemented by graphs made by them with the aid of recording and measuring instruments of precision that were also exhibited and demonstrated in the courtroom at the hearing on the merits and in the presence of the trial judge. In substance it was shown that both types and shapes mentioned and produced in this record vibrated and moved as a whole from the top or apex of the bowl or cone within their margins and that the results show that both and each operated as a plunger with the same amplification in each, and wholly different in volume and quality from tones amplified with flat plate types of diaphragms or resonators.

It is to be further observed that Beauchamp's invention cannot, considering his disclosures in the light of the prior art, be said to reside solely in his conical resonator and its extent of annular contact with a circular bridge. It contains, in addition to these, a novel element of actuating the resonator directly instead of through a spring, spider, sound posts, or other intermediate device. This trinity of elements co-ordinating and co-operative with the other features described and claimed in the patent produced a new combination that to a more satisfactory and useful degree attained an objective in the manufacture of guitar type stringed musical instruments.

We think that when the defendants seek to limit and restrict the novel feature of the patent merely to a device in which the cone is indented at the apex and broadened at the base to provide a seat or bead (16) on which the bridge (17) can rest, they fail to credit the patent with its combination aspect. They overlook the plurality of new elements that the combination patent discloses and supplies in the stringed musical instrument art of the guitar type.

Finally on the question of patentability, a most potent indication of the inventive quality and the theretofore nonaccomplishment of the result of the Beauchamp patent in suit is found in what is considered the closest competent reference in the record before this court, that of J. Dopyera, No. 1,762,617, which has been cited earlier in this memorandum. That inventor says: "Experiments have also determined that the best results can be obtained by using three of the resonators. The use of less than three resonators substantially decreases, and the use of four

slightly decreases the volume. In some cases, four resonators may be used with good results, but it is preferable to use three and never less than three."

It now seems to be concluded that single conical resonators produce the best present-day results in guitar manufacture, and Beauchamp is undoubtedly the originator of this improved result.

The fact, shown by the record, that the defendants and others, such as R. Dopyera, in patent No. 1,872,633, who made claims subsequent to the filing of the Beauchamp application for the patent in suit, adopt the single conical metallic resonator or diaphragm, and that its commercial success is established, shows that J. Dopyera and all others preceding Beauchamp left unsolved the problem. that Beauchamp demonstrated.

The patent No. 1,808,756, issued July 9, 1931, to George D. Beauchamp, is a combination patent and is valid, and the clear claims of such patent that are in issue should be given the scope to which they are entitled under the known art at the time of the invention.

With the patent in suit held to be valid and such of. its litigated claims as are unambiguous and unaffected by the prior art entitled to a liberal range of equivalents under the doctrine of the Eibel Case, supra, we reach the ultimate question of infringement by the defendants.

The evidence shows that the defendants have commercially made and sold three types of metallic resonators, for operation in combination with guitars which they also sell at their place of business in Los Angeles, Cal. The defendants' devices are marked in the record as plaintiffs' Exhibits 1, 2, and 3 respectively and have been correspondingly referred to in this suit as small bridge type, large bridge type, and grid type.

The only difference in structural aspect between the two so-called bridge types is in the diameters of bridges and the positioning of the bridge to the concavo-convex diaphragm or resonator. In the case of the small bridge type the fastening of the bridge to the resonator is by means of a screw which indents and extends through a washer and the resonator into a block. The larger type does not employ this screw and washer construction. With this dissimilarity, these two types may be described thus: "A concavo-convex thin metal resonator, presenting substantially spherical surfaces, provided with a bead, and a flat surface inwardly adjacent thereto, having a central annular bridge receiving portion formed by indenting a central part of the cone on which portion a bridge of substantial diameter is mounted, forming annular engagement therewith."

The so-called grid type also includes a thin metallic concavo-convex resonator presenting substantially spherical surfaces, provided with a bead and a flat surface inwardly adjacent thereto, above which is positioned a circular grid carrying the bridge, reinforced by transverse cleats or ribs the ends of which rest on the flat surface mentioned at intervals around the circumference of the grid. All of the resonators of defendants' construction are mounted in the guitar with bases or mouths upward instead of downwardly as shown in the patent in suit.

Probably the broadest claim in the Beauchamp patent is claim 12, and if the invention disclosed by the patent is such a forward advance in the art of amplifying stringed musical instruments as to warrant this claim, then admittedly all three types of defendants' structures are infringements, because defendants' brief states: "Claim 12, if construed literally, is readable upon the defendants' constructions wherever the bridge is supported at the bottom of the hemispherical diaphragm."

This claim, which is the only one of the thirteen claims of the patent that is not limited to a guitar, reads: "12. A stringed musical instrument comprising a body, a resonator mounted therein and provided with a. central depressed portion, means ·for supporting said resonator in operative position, strings stretched over said body, and means directly engaging said strings and said depressed portion for communicating vibrations from the strings to the resonator."

The patent in suit is not entitled to such high rank in the art involved as to justify the allowance of this claim or as to require the court to construe this claim so broadly as to read upon defendants' structures. In the first place, we think that the patent in suit should be, and from the drawings and specifications of it was intended to be, one relating to stringed musical instruments of the guitar or banjo types, notwithstanding the statement in the patent that it related to stringed instruments in general; and, secondly, because the prior art, Donboli No. 590,521,

for instance, forbids the inclusion of such omnibus claims as for any kind or shape of resonator with a central depressed portion. In re Bowles (Cust. & Pat.App.) 71 F.(2d) 202.

Claim 6 is as follows: "6. A guitar comprising a body, a conical resonator mounted therein, strings stretched over said body, and a bridge engaging said strings and having an annular portion making annular contact with said resonator for tensioning the strings and transmitting vibrations from the strings to the resonator."

All three types of the defendants' constructions fall within the terms of this combination claim, the only differences being in the shape of the metallic diaphragm and in the extent of the annular engagement or contact of the bridge with the resonator. These points of difference are mechanical equivalents of Beauchamp under our construction of his patent as shown by the evidence. We have already directed attention to the clear proof that the upward or downward positioning of the metallic resonators in evidence is inconsequential, as both employ like modes of operation and function in the same way, and there is nothing in the patent that necessarily required annular engagement of the tensioning member for the full extent of the circle of contact. What the patent does require, and what is necessary in order that the bridge does not fail or "wabble," as one witness expressed it, is that the annular bearing of the bridge should be sufficiently extensive to maintain the operable durability of the stringed musical instrument.

Claim 5 reads: "5. A guitar comprising a body having an opening in the top thereof and strings stretched thereover, a conical resonator supported in the body below said opening, means for supporting the strings in playing position over the top of said body, and a tensioning member engaging said strings and said resonator and having an annular portion making annular contact with the resonator."

This claim is also invaded by each of the three types of defendants' structures, for the same reasons that are applicable to the infringement of claim 6.

Claim 7 reads: "7. A guitar comprising a hollow body having an opening in the top, strings supported over said opening, a conical resonator mounted in the body and having an annular bridge receiving portion disposed adjacent said opening, and a bridge inter-posed between said strings and said resonator and engaging said annular portion, for the purpose described."

The so-called grid type, Plaintiffs' Exhibit 3, possesses all of the elements in this combination claim. The substantially conical diaphragm or resonator has an annular bead upon which the grid is mounted, which bead forms the "annular bridge receiving portion," and which bead is "adjacent said opening," and the grid acts as a part or extension of the bridge to fit the "annular portion" of the resonator, and the grid is interposed between the strings and the resonator for the purpose of more effectively transmitting the vibrations in the operation of the stringed musical instrument.

Claim 8 of the patent is also infringed by the defendants' so-called grid type, Plaintiffs' Exhibit 3.

Claim 9 is as follows: "9. A guitar comprising a hollow body, strings held thereon, a conical metallic resonator mounted within the body and provided with a central annular bridge receiving portion formed by indenting the central portion of the cone, and a circular bridge contacting therewith throughout the extent of said annular bridge receiving portion and engaging said strings, whereby the resonator and the strings are held in tension."

This combination claim overcomes deficiencies in claim 12 in the light of the prior art. It describes the resonator or diaphragm or sounding board as a "conical metallic resonator," and contains other limitations that are not in any way affected by the prior state of the art as it has been shown in this suit. The two bridge types of defendants' constructions, Plaintiffs' Exhibits 1 and 2, are infringements and come within the scope of this claim 9.

Each has a hollow body, and strings stretched thereon, at least the mechanical equivalent of a conical resonator made of metal, which is mounted within the body, and is provided with a central annular bridge receiving portion formed by indenting the central portion of the cone or its equivalent, and possesses a circular bridge which contacts with the resonator throughout the extent of the annular bridge receiving portion and engaging the strings, by means of which the strings of the guitar are held in tension. The fact that in the small bridge type the contact between the

bridge and the resonator may be circular as well as annular does not avoid infringement. Neither is infringement overcome by changing the gauge or thinness of the metallic resonator. There is nothing in the patent that is infringed which limits the metal of the resonator to any specific gauge or thickness. Nor is the character of the bead of annular contact or engagement nor the length of the bridge made a limitation of the patent in view of the prior art, and therefore any modifications of these features of the invention which retain the mode of operation and accomplishment of result in the same way as described and claimed in the patent are matters that fall in the category of changes that are attributable to mechanical skill only.

The only claims that remain in issue in this suit that have not been discussed in relation to the structures of the defendants are claims 1, 3, and 4 of the patent in suit. In view of the findings and conclusions of infringement by defendants of claims 5, 6, 7, 8, and 9 of the Beauchamp patent, No. 1,808,756, it is considered unnecessary to discuss these three remaining claims. Suffice it to state that each of these claims contains obscure verbiage that may render these claims too uncertain upon which to predicate infringement thereof by the defendants under the record here presented. We conclude that it is not necessary for this court to pass upon any of these three claims at this time, other than to say that neither a "cover plate" feature in claim 3 nor a "transverse guard member" mentioned in claim 4 amount to invention.

Findings and usual decree for injunction and accounting, with costs, are ordered for complainants and against all defendants upon the litigated issues of their bill of complaint, the bill of complaint in intervention of Emil Dopyera, and the answers.